IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:96-cr-00008-1 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| ROBERT WARE | ) | |

## MEMORANDUM OPINION

Before the Court is Defendant Robert Ware's Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act (Doc. No. 411, "the Motion"). The Government responded in opposition (Doc. No. 412), and Defendant replied (Doc. No. 415). For the reasons set forth herein, the Motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The Sixth Circuit previously has summarized Defendant's trial and sentence as follows:

> In March 1997, a federal jury found Ware guilty of conspiracy to distribute and possess[ ] with intent to distribute cocaine [Count One] and conspiracy to distribute and possess[ ] with intent to distribute cocaine base [Count 2] in violation of 21 U.S.C. § 846, and unlawful distribution and possession with intent to distribute cocaine [Count 3] in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Ware to 360 months of imprisonment and five years of supervised release. On appeal, a panel of this court affirmed Ware's conviction and sentence. *United States v. Ware,* 161 F.3d 414, 425 (6th Cir. 1998).

*Ware v. United States*, 55 F. App'x 351 (6th Cir. 2003). Notably, Defendant was sentenced on June 9, 1997, slightly more than three years before the United States Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000). As the Court explained in rejecting an earlier challenge to Defendant's sentence:

> In *Apprendi,* the Supreme Court announced that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at ——–——, 120 S.Ct. at 2363–64. Courts are now recognizing that this rule changes how the weight of

> drugs must be treated in drug convictions. Courts can no longer treat the weight of the drugs as a sentencing factor that the trial judge can determine under a preponderance of the evidence standard. Instead, when the amount of drugs will increase the sentence beyond the maximum penalty that applies regardless of weight, the Government must charge the weight of the drugs in the indictment and must prove the weight of the drugs to a jury beyond a reasonable doubt.
>
> Under *Apprendi,* it was error not to specify the weight of the drugs in Ware's indictment and not to allow a jury to determine the weight of the drugs beyond a reasonable doubt.

*Ware v. United States*, 124 F. Supp. 2d 590, 593 (M.D. Tenn. 2000), *aff'd,* 55 F. App'x 351 (6th Cir. 2003).[1] At the time of Defendant's sentencing, therefore, it was understood (incorrectly, in the Supreme Court's opinion as pronounced three years later) to be the Court's (not the jury's) job to determine the quantities for which Defendant was responsible for purposes of determining Defendant's maximum penalties (as prescribed by 21 U.S.C. § 841(b)(1)) for his three convictions.[2]

It was also understood at the time of Defendant's sentencing that the Court was generally required to sentence a defendant within the applicable guideline range (as it existed prior to any departure that the Court might choose to express in terms of a different, post-departure guideline range)[3] because: (a) sentencing within the (pre-departure) guideline range was mandatory, absent some cognizable exception that would properly allow for an upward or downward departure; and

---

[1] The sentencing judge's very understandable error was not grounds for relief, however, because "the Supreme Court decided *Apprendi* on June 26, 2000, more than a year after Ware's case became final [thus making] the question . . . whether this Court should apply *Apprendi* retroactively to cases on collateral review." This question was eventually answered in the negative, thus foreclosing Defendant's opportunity to obtain relief on collateral review based on *Apprendi*. *Ware v. United States*, 55 F. App'x 351, 352 (6th Cir. 2003) ("[T]he rule of *Apprendi* is not retroactively applicable to an initial § 2255 motion like Ware's.").

[2] The maximum penalty for each of Defendant's convictions—two for violating 21 U.S.C. § 846 and one for violating 21 U.S.C. § 841(a)(1)—were prescribed by 21 U.S.C. § 841(b)(1).

[3] It does not appear that in the pre-*Booker* system, a departure had to manifest itself in a different (higher or lower) guideline range prior to the court sentencing within that new guideline range; it appears instead that a court granting a departure could simply pronounce whatever sentence it felt appropriate outside of the guideline range as announced prior to the departure.

(b) these authorized departures were "unavailable in most cases," being reserved for "limited, specific cases." *United States v. Booker*, 543 U.S. 220, 233, 234 (2005), This was years before *Booker* instructed otherwise by declaring unconstitutional 18 U.S.C. § 3553(b)(1). Until then, within-guideline sentencing was considered generally mandatory—and absolutely mandatory unless the court found aggravating or mitigating circumstances not adequately taken into account in formulating the guidelines—because that is what 18 U.S.C. § 3553(b)(1) provided. *See id.*at 234.

The sentencing judge's performance of these two tasks—(1) determining the quantity of drugs for purposes of ascertaining the mandatory maximum and minimum penalties on each of the three counts, and (2) determining the ostensibly mandatory guideline range for the three counts under the United States Sentencing Guidelines—is what is primarily at issue on Defendant's Motion. Regrettably, the sentencing judge was not as express or specific as he might have been in making these determinations, but he was clear enough to illuminate the correct path forward for the Court now.

The parties apparently agree, and the record confirms, that the sentencing judge held Defendant accountable, for purposes of computing the guideline range, for enough cocaine[4] to result in a base offense level of 34, which in turn (with six extra levels of enhancements not here in dispute) led to a total offense level of 40. As the Government notes, Defendant did not challenge this conclusion on direct appeal, and this conclusion stands unrefuted today. Given Defendant's criminal history category (VI), this meant a final guideline range of 360 months to life in prison.

---

[4] Herein, the terms "crack cocaine," "cocaine base" and "crack" are synonymous, as are the terms "cocaine [standing alone]" and "powder cocaine."

Particular comments of the sentencing judge shed light on how and why he reached this guideline range. He was faced with a Government theory whereby, according to the Government, he could find a quantity of crack sufficient to result in a base offense level of 38 rather than 34.[5] Seeking to assess whether he needed to determine the quantity of crack, he made the following observations and inquiry.

> THE COURT: Some of it obviously was crack and some of it was powder. He is looking at 30 years to life without consideration of the crack, Mr. Roden [the prosecutor]. Do you want the Court to make a finding of fact of how much crack there was?

(Doc. No. 390-5 at 4, Excerpt of Sentencing Hearing Transcript). To this, the prosecutor responded that an approximation would be sufficient. Ultimately, the sentencing judge determined neither a precise nor an approximate amount. Rather, the sentencing judge determined (and evidently felt the need to determine) only that he could not find Defendant accountable for 500 grams or more of crack, the amount necessary to increase Defendant's base offense level to 38 as requested by the Government. (Doc. No. 3905 at 5-6). Instead, the Court adopted the findings of the Presentence Investigation Report—which, the parties agree, assessed a base offense level of 34, and a resulting offense level of 40 based Defendant's responsibility for 26.6 kilograms of powder cocaine and 3.6 grams of crack. (Doc. No. 390-5 at 5-6, 8).

From all of this, it is clear that the sentencing judge calculated a final guideline range of 360 months to life in prison, and that he did so without determining any particular amount of crack for purposes of Defendant's guideline computations under U.S.S.G. § 2D1.1. It is also clear that

---

[5] As Defendant correctly explains (Doc. No. 411 at 5-6) , the Government's theory as to the quantity of crack involved was that the powder cocaine at issue could be processed into crack. Based on the quantity of powder cocaine involved, the Government asserted that 1.5 kilograms or more of crack could have been generated in Defendant's case, which would have resulted in a base offense level of 38 (rather than 34), a total offense level of 44, and a guideline sentence (not a guideline "range") of life imprisonment.

4

the sentencing judge would have calculated a final range of 360 to life even without including *any* amount of crack in his guideline computations under U.S.S.G. § 2D1.1.

As the parties agree, and as reflected in the sentencing transcript (Doc. No. 390-5 at 9-10), the sentencing judge imposed a sentence of 360 months without distinguishing between the three counts of conviction, announcing apportionment of the sentence between counts, or otherwise announcing a sentence on each count. As noted above, Defendant's conviction and sentence were upheld on appeal. *Ware,* 161 F.3d 414. Moreover, Defendant has failed to obtain post-conviction relief in a series of collateral attacks, as summarized by the Government. (Doc. No. 412 at 4-9).

Defendant now contends he is eligible for relief under Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194, and that he should receive such relief (in the form of a reduced sentence). The Government disputes both that Defendant is eligible for relief and that, even assuming eligibility for relief, he should receive such relief.

## DISCUSSION

I. DEFENDANT'S ELIGIBILITY FOR A REDUCED SENTENCE UNDER THE FIRST STEP ACT

Section 404 gives retroactive effect to segments of the Fair Sentencing Act of 2010, which increased the respective threshold quantities of crack cocaine required to trigger each of the tiered statutory maximum and minimum punishments prescribed by 21 U.S.C. §841(a)(1).[6] *See* First Step Act § 404; Fair Sentencing Act § 2.

---

[6] One of the Fair Sentencing Act's chief focuses was remedying the unjustifiably large disparity in statutory sentencing ranges for crack cocaine versus powder cocaine. Prior to the Fair Sentencing Act, quantity-based crack punishments compared to powder cocaine punishments at a ratio of 1:100; 50 grams of crack cocaine warranted the same statutory punishment tier as 5,000 grams of powder cocaine. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat 2372. Congress found this rift between the two substances' treatment had a disparate impact on African-American communities. *See*, *e.g.*, *Dorsey v. United States*, 567 U.S. 260, 268-69 (2012). The Fair Sentencing Act decreased that ratio to 1:18. Pub. L. No. 111-220, 124 Stat 2372.

Section 404 permits courts to grant relief for defendants convicted of a "covered offense," meaning "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act [] of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act § 404. *E.g.*, *United States v. Boulding*, 379 F. Supp. 3d 646, 651 (W.D. Mich. 2019) ("[E]ligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act."); *United States v. Burke*, No. 2:08-CR-63(1), 2019 WL 2863403, at *3 (E.D. Tenn. July 2, 2019) ("[T]he defendant is eligible for relief as to Count One under the First Step Act because he was convicted of a "covered offense" under Section 404(a)'s definition.").

If the defendant is deemed eligible for relief based on satisfying this single requirement, the court (namely, the one that sentenced him previously) may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act were in effect at the time the covered offense was committed." § 404(b). The decision to impose a reduced sentence for an eligible defendant is within the court's discretion, as "nothing in [§ 404] shall be construed to require a court to reduce any sentence pursuant to [that] section." § 404(c); *see also Boulding*, 379 F. Supp. 3d at 654 (The First Step Act "leav[es] the Court with discretion to deny relief completely, or to tailor relief to fit the facts of the case."); *Burke*, 2019 WL 2863403, at *3 ("Because the defendant is eligible for relief, this Court has the discretion under 404(b) to impose a reduced sentence in accordance with the statutory penalties.") (internal quotation marks omitted). Defendant contends that he is eligible for such relief, and that such relief should be granted to a degree to be determined at a hearing. (*See* Doc. No. 411). The Government responds that Defendant is ineligible for relief and should be denied relief even if he was eligible. (*See* Doc. No. 412).

As detailed above, finding that a defendant was convicted of a covered offense is the prerequisite for First Step Act eligibility for a reduced sentence—in fact, the only one beyond the requirement that any court imposing the reduced sentence be the one that imposed the sentence originally. Only "violations" for which the statutory penalties changed under section 2 or 3 of the Fair Sentencing Act are covered offenses. Section 2 of the Fair Sentencing Act did change 21 U.S.C. §841(b)(1)—the statute prescribing the penalties for the offense of which Defendant was convicted on Count 2—but it changed only the boundaries of the statute's punishment tiers and not the punishment ranges within those tiers. The threshold for the lowest tier moved from less than 5 grams to less than 28 grams, 21 U.S.C. § 841(b)(1)(C); the intermediate tier moved from between 5 grams and less than 50 grams to between 28 grams and less than 280 grams, 21 U.S.C. § 841(b)(1)(B); and the highest tier moved from 50 grams or more to 280 grams or more, 21 U.S.C. § 841(b)(1)(A). The range of prison terms, and other components of a sentence, applicable to a tier did not change. *See* Fair Sentencing Act § 2. Still, if a defendant is convicted of a crime as to which the Fair Sentencing Act changed the threshold quantities (though not the corresponding penalties), then the defendant was convicted of a "covered offense" *See United States v. Black*, 388 F. Supp. 3d 682, 687 (E.D. Va. 2019)

Two approaches have emerged regarding what quantity of crack courts are to use when determining if a defendant was sentenced for a covered offense. One is the "conduct-controls" theory,[7] as the Court terms it. Under this view, the effect, if any, of the Fair Sentencing Act's

---

[7] This was labeled the "offense-controls" theory in at least one case, *United States v. Blocker*, 378 F. Supp. 3d 1125, 1128 (N.D. Fla. 2019). "Conduct controls" more aptly captures what it is that the Government believes is controlling in determining whether there is a covered offense: the defendant's conduct (*i.e.,* how much crack the defendant is responsible for as a factual matter for purposes of sentencing, given his conduct). By contrast, the Government does not believe that the "offense"—a term seemingly synonymous with "violation of a specific charged criminal statute—controls. *Blocker,* which adopts this approach, seems to regard "offense" and "conduct" as synonymous, *see id.*, whereas courts adopting the other approach (discussed below) turn their decisions on distinguishing between "offense"

7

threshold changes should be considered in light of the total crack quantity attributed to the defendant's conduct at the time of sentencing.

The other theory is the "conviction-controls"[8] theory, as the Court terms it. Under this view, a quantity established by a Presentence Report, stipulated as a factual basis for a plea agreement, or found by a sentencing judge for guideline purposes only is not determinative. The Fair Sentencing Act thresholds are instead applied to the quantity of crack alleged in the charge for which the defendant was convicted (and sentenced). Today, in general this means the quantity (if any) alleged in the indictment (or information, if the defendant waived indictment). But in the pre-*Apprendi* era in which Defendant was sentenced, when it was not understood that threshold quantities to trigger stiffer penalties needed to be alleged in the charging document, typically (and in Defendant's case) the quantity was not alleged in the charging document.

In this case, the Court does not discern where either party took a particular position for or against either theory. Perhaps this is because, unlike in many other petitions for relief under the First Step Act, the result is the same under the parties' respective factual theories. That is, if the

---

and "conduct." *E.g., United States v. Dodd*, 372 F. Supp. 3d 795, 797 (S.D. Iowa 2019) ("The First Step Act, however, applies to offenses and not conduct.") Therefore, "conduct-controls" more clearly contrasts this approach's rationale with the opposing view than does "offense-controls".

[8] *Blocker* again labels this approach differently than does this Court, referring to it as the "indictment-controls" theory, 378 F. Supp. 3d at 1128. The different labels impart different emphases. The courts embracing this theory actually have tended to focus on the specification of crack quantity contained in the charge(s) on which the defendant was *convicted*, not the charges on which the defendant was *indicted.* True, the quantity of conviction usually matches the quantity alleged in the indictment. But this is not always true, and in any event what really matters here is the quantity of conviction; the fact that it tends to match the quantity alleged in the indictment is merely incidental in this context. Moreover, the fact that a defendant sometimes is charged ultimately by information rather than indictment renders the moniker "indictment-controls" less apt than "conviction-controls." As the undersigned has discussed elsewhere, the majority of courts to have addressed the issue reject the conduct-controls approach and embrace this one not because a grand jury did not decisively find a quantity that tracks the FSA thresholds in an *indictment*, but rather because a petite jury did not decisively find the threshold quantity when *convicting* (or because the defendant did not decisively admit the threshold quantity when submitting to *conviction* by guilty plea). The concern in attributing such quantities to a defendant is the deprivation of a defendant's Sixth Amendment right to a jury trial, not an insufficient indictment. Therefore, "conviction-controls" imparts the logic of the theory more effectively.

Government is correct that the sentencing court held Defendant responsible for only 3.6 grams of crack, then its argument—that the Fair Sentencing Act did not change the statutory penalties for Defendant's crack conviction on Count 2—is equally valid (or invalid) under either theory. According to the Government, Defendant was held responsible at sentencing for only 3.6 grams, for purposes of both the calculating the guideline range and determining the offense for which he was convicted (*i.e.*, a conspiracy offense subject to a term of imprisonment of 0-20 years under 21 U.S.C. § 841(b)(1)(C) or a conspiracy offense subject to a higher range of imprisonment under 21 U.S.C. § 841(b)(1)(A) or (B). (Doc. No. 412 at 10). The Government argues (without apparent reference to either of the two theories) essentially that because the 3.6 grams of crack is below both the original 5-gram threshold and the Fair Sentencing Act's amended 28-gram threshold, his statutory sentencing range would be no different "if [the Fair Sentencing Act was] in effect at the time the covered offense was committed." First Step Act § 404(b). Therefore, according to the Government, Defendant is not eligible for First Step Act relief.

By contrast, according to Defendant, he was held responsible at sentencing for at least 5 grams but less than 500 grams, both for calculating the guideline range and determining the offense for which he was convicted. (Doc. No. 411 at 7-8). Defendant argues (without apparent reference to either of the two theories) that his conviction on Count 2 was for a "covered offense" essentially because, along the continuum of Defendant's attributable quantity range of 5 grams to 500 grams, the Fair Sentencing Act changed the thresholds necessary to trigger a higher penalty range. That is, 5 grams of crack previously triggered the higher penalty range of 21 U.S.C. § 841(b)(1)(B), but under the Fair Sentencing Act 28 grams is required; likewise, 50 grams of crack previously triggered the even higher penalty range of 21 U.S.C. § 841(b)(1)(A), but under the Fair Sentencing Act 280 grams is required.

9

For reasons the Court need not detail here, the undersigned has previously adopted the "conviction controls" theory. *See United States v. Stone*, No. 3:04-CR-00142, 2019 WL 4259455, at *3 (M.D. Tenn. Sept. 6, 2019). Therefore, although it may make no substantive difference here, the Court will proceed and speak in terms of the conviction-controls approach. Apparently implying the justifiable view that each different penalty range (prescribed by 21 U.S.C. § 841(b)(1)) for a violation of 21 U.S.C. §841(a)(1)) entails a different offense,[9] the Government argues essentially that Defendant was convicted specifically of the zero-to-twenty-year offense based on 3.6 grams of crack. The Government argues that the Fair Sentencing Act did not change the threshold for such offense in any way relevant to this case; 3.6 grams of crack implicated the zero-to-twenty-year offense, and only the zero-to-twenty-year offense, both before and after the implementation of the Fair Sentencing Act.

Defendant sees it differently, asserting that Defendant was sentenced on Count 2 in the 5-40 year tier, which at the time of sentencing corresponded to 5 grams or more of crack. Defendant here relies heavily on the correct notion that when a judge, sentencing on multiple counts, pronounces a single sentence without pronouncing a sentence specific to individual counts, the sentence generally applies to all counts. (Doc. No. 411 at 8) (citing *United States v. Mackay*, 715 F.3d 807, 846 (10th Cir. 2003)). Such a sentence is lawful, "provided that the sentence imposed is not in excess of the maximum allowed by law for all of the offenses of which the defendant is guilty." (Doc No. 415 at 1-2) (quoting *Davis v. United States*, 269 F.2d 357, 363 (6th Cir. 1959)). Defendant reads that last sentence as if *Davis* stated "any" instead of "all," and concludes that

---

[9] It is appropriate to think of a federal drug trafficking offense as an offense distinct from other drug trafficking offenses even if it is different only with respect to the quantity of the applicable drug involved in the offense. This is because "drug quantity is an element of the offense" with respect to federal drug trafficking crimes. *United States v. Dado*, 759 F.3d 550, 570 (6th Cir. 2014). So different quantities means different elements, which apparently may be considered to mean different offenses or, as the First Step Act puts it, different "violation[s]."

*Davis* entails that Defendants' general sentence of 360 months was lawful only if such sentence was not in excess of the statutory maximum of *any* of Defendant's three offenses of conviction; ergo, since Defendant's sentence is presumed lawful, his sentence on Count 2 must have been imposed on a sentencing tier higher than 0-20 years.

The problem is that Defendant's view of *Davis* appears incorrect, and that when *Davis* referred to the maximum allowed for "all," it indeed meant maximum allowed for "all." Those cases that have cited *Davis* on this point have cited it for the proposition—recognized as widely accepted—that "a single sentence on two or more counts for a term *within the aggregate* is not illegal." *Benson v. United States*, 332 F.2d 288, 290 (5th Cir. 1964) (emphasis added) (citing, *inter alia*, *Davis*, 269 F.2d at 363).

The precise question, then, is whether a general sentence on a multi-count conviction is valid and not excessive when it exceeds the maximum punishment allowable on one count but falls within the aggregate punishment permitted on all the counts. "Cases are legion recognizing that a single sentence imposed on a conviction of two or more counts for a term within the aggregate punishment allowed on all the counts is not illegal or excessive." *Peoples v. United States*, 412 F.2d 5, 6 (8th Cir. 1969) (citing, *inter alia*, *Davis*, 269 F.2d at 363). The question thus apparently should be answered in the affirmative.

On the other hand, *Davis* did conclude its discussion by observing that "[t]he single sentence imposed in the present case was not in excess of the maximum allowed for *any one count*." *Davis*, 269 F.2d at 363. (emphasis added). Although this observation is not actually inconsistent with an affirmative answer to the above question, the fact that the Court made it may lend some support to Defendant's interpretation of *Davis* as answering the question in the negative. The Court will assume *arguendo* that Defendant has correctly construed *Davis* as requiring each

11

count sentenced to be within the statutory maximum for that count. In that case, the sentence imposed on Defendant for Count 2 either was illegal or was imposed under the sentencing judge's understanding that Defendant fell into a higher sentencing range than 0-20 years due to the (inexactly determined) amount of crack for which the sentencing judge deemed Defendant responsible.

The Court is loath to assume that the sentencing judge imposed an illegal sentence. Moreover, the sentencing transcript is consistent with the notion that the sentencing judge accepted the Government's argument that Defendant was responsible for substantially more than 3.6 grams of crack (though less than 500 grams). In short, accepting, or indeed even without accepting, *arguendo* Defendant's interpretation of *Davis*, the Court finds that Defendant was sentenced for an offense punishable by 5-40 years or an offense punishable by 10 years to life. Because the Fair Sentencing Act changed the threshold quantities for these offenses, the statutory penalties for these offenses were "modified" by the Fair Sentencing Act within the meaning of Section 404 of the First Step Act; therefore, Defendant's conviction was for a "covered offense." This makes Defendant technically eligible for relief under the Section 404 as it is written.

II. WHETHER TO REDUCE DEFENDANT'S SENTENCE

As indicated above, even for eligible defendants, a sentence reduction in any amount is not automatic, as the Court has the discretion not to grant a reduced sentence. And in exercising that discretion, the Court must keep in mind that any reduced sentence is to be imposed "as if [the Fair Sentencing Act] were in effect at the time the covered offense was committed." First Step Act § 404(b). The Court does not take this to mean that it may grant a reduced sentence only if the original sentence certainly would have been lower had the Fair Sentencing Act been in effect at the time the covered offense was committed; the statute is not written exactly to prescribe such a

12

prerequisite to eligibility for a reduced sentence for a covered offense. Nevertheless, the quoted language informs the exercise of the Court's discretion, indicating that a reduced sentence would not serve the purpose of the First Step Act if it would have made no difference if the Fair Sentencing Act "were in effect at the time the covered offense was committed." As set forth below, this is just such a case.

The Court can decide whether to exercise this discretion without holding a hearing. *See United States v. Nance*, No. 8:08-cr-449, 2019 WL 2436210 (D. Neb. June 10, 2019); *cf. United States v. Washington*, No. 03-CR-20045-JES-DGB, 2019 WL 4750575, at *3 n.1 (C.D. Ill. Sept. 30, 2019) (noting, in context of deciding how much to reduce the defendant's sentence, "Defendant requested the Court schedule a hearing on the Motion so that [the defendant] could assist the Court in exercising its discretion. [ ] However, the Court believes the briefs and the record adequately present the facts and legal arguments, and a hearing would not significantly aid the Court.") (citation omitted)). "The Court may hold a hearing if it deems necessary to adequately address the issues of a particular case, or to properly consider the § 3553(a) factors, but it need not do so for every § 3582 Motion under the FIRST STEP Act." *Wright v. United States*, 393 F. Supp. 3d 432, 441 (E.D. Va. 2019). The Court believes that a hearing is not necessary for it to determine whether relief is warranted in this case.

"Although the [First Step] Act does not require a plenary resentencing proceeding, courts nevertheless consider the Section 3553(a) factors to determine whether a sentence modification is warranted." *United States v. Sorrell*, No. 07-20365, 2019 WL 4139398, at *1 (E.D. Mich. Aug. 30, 2019). Here, three Section 3553(a) factors strongly militate against a sentence reduction, as reflected by the following discussion.

13

The guideline range recognized by both parties, 360 months to life, is still applicable. The reform of unduly harsh sentencing for crack has not affected this at all—because, as noted throughout by the Court, the guideline range was driven by the quantity of powder cocaine involved in Defendant's crimes. Although not mandatory, as noted above the guideline range certainly informs this Court's decision, especially in a circumstance such as this, where plenary sentencing considerations are not warranted. The fact that Defendant's sentence was at the bottom of the (still-applicable) guideline range tends to suggest that reduction of Defendant's sentence may not be warranted.

The driving force behind that guideline range further militates against the conclusion that discretionary relief is appropriate under the First Step Act. The guideline range, which by itself was determinative of Defendant's (bottom-of-the-guideline-range) sentence, was based on the Court's express adoption of the guideline calculations of the PSR. And Defendant specifically acknowledges, these guideline calculations were "driven by the 26.6 kilograms of powder cocaine, not the 3.6 grams of crack."[10] (Doc No. 411 at 5). Exactly. That makes this case like *United States v. Westbrook*, No. CR 3:09-714-2-CMC, 2019 WL 1542571 (D.S.C. Apr. 9, 2019), *aff'd*, 775 F. App'x 762 (4th Cir. 2019), in which the court denied relief:

> [Defendant's] statutory penalty was not therefore controlled by the 50 grams or more of cocaine base charged in Count 1. Nor was his sentence. Because he admitted guilt to conspiracy to distribute five kilograms or more of cocaine, his statutory penalty was 20 years to life with a § 851 enhancement for a prior conviction, without any consideration of 50 grams or more of cocaine base. Neither did the Guideline calculation of his offense level, based in part on cocaine base, affect his sentence. The guideline range (360 months to Life) was based on his career offender status [and not on crack quantities attributed to the defendant].

---

[10] The Court cannot fathom why, given the undeniable reality of the facts set forth in the two sentences preceding this footnote, Defendant asserts elsewhere that Defendant's "crack-cocaine conviction . . . drove his sentencing." (Doc. No. 411 at 11).

*Id.* at \*3.

The Court cannot ignore the reality of the conclusive role that powder cocaine played in Defendant's sentencing, even if Defendant also happened to be sentenced simultaneously on a crack offense. *Cf. United States v. Jones*, No. CR 94-0067-WS, 2019 WL 1560879, at \*2 (S.D. Ala. Apr. 9, 2019) (finding the defendant ineligible for relief because defendant "cannot discount, ignore, or strike through the 16 kilograms of cocaine with which he was charged in Count One, which is certainly enough to trigger the 10-life statutory sentencing scheme pursuant to which he was sentenced.").

This is a case about a 30-year sentence that resulted from: (a) a high guideline range *based on powder cocaine*; and (b) then-existent law (18 U.S.C. § 3553(b)(1) and case law applying it) that generally required the court to sentence within the guideline range. It is also about the fact that the *Booker* decision overturning of such law was judicially determined not to have retroactive effect.[11] It is also about whether a 30-year sentence was unduly harsh under the circumstances. Arguably, this case is also about the fact that under then-existent law, threshold drug quantities did not have to be alleged in an indictment to trigger higher mandatory minimum and maximum penalties, and that the *Apprendi* decision ultimately overturning such law was ultimately judicially declared to be non-retroactive.

In short, this case may be about many things. One thing it undeniably is *not* about is a sentence that is unduly harsh due to a disparity in the sentencing treatment of powder cocaine versus quantities of crack cocaine, or a sentence that was too severe for the quantity of crack cocaine involved. To the contrary, it is about a sentence that is harsh (whether or not unduly harsh)

---

[11] "[W]e conclude that *Booker*'s rule does not apply retroactively in collateral proceedings," *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005).

*because of the quantities of powder cocaine* involved. In short, it is about the alleged harshness of a sentence that resulted from guideline calculations for powder cocaine and from generally mandatory sentencing within the guideline range even when the indictment did not allege statutory threshold amounts sufficient to authorize sentences as high as the sentence imposed.[12]

The things this case is actually about may be legitimate topics of debate and/or reform. But none of them is even remotely what Section 404 of the First Step Act is about. And none of them generally is grounds for resentencing or leniency of any kind for convicted defendant who were *not* convicted of a "covered offense" as defined by the First Step Act. Surely each of such defendants would like to have a second bite at sentencing based on *Booker, Apprendi,* and/or the alleged harshness of the statutory penalties and sentencing guidelines for his or her offense(s). But they cannot. Nor should Defendant, just because he happened to be convicted of a covered offense in addition to the powder cocaine offense that drove his sentence. The concerns at which the First Step Act was directed are entirely inapplicable to his case, and it would not be just to invoke the First Step Act to give him the second bite that the vast majority of federal offenders are denied.

To summarize, the offenses driving Defendant's thirty-year sentence were in the nature of *powder cocaine* offenses, and the sentencing on them was based on the crucial fact of the amount of *powder cocaine* for which defendant was responsible. The (now-advisory) guideline range tends to indicate that the 30-year sentence may be an appropriate one. And a grant of relief here would promote unwarranted sentencing disparities between defendants who (a) are convicted only of possessing with intent to distribute, and of conspiring to possess with intent to distribute, powder cocaine, and (b) defendants who are convicted of (i) such powder cocaine offenses *and* (ii) a crack

---

[12] The Court notes that any alleged harshness of the sentence is at least mitigated to an extent by the sentencing judge's merciful—and, in the view of the undersigned, appropriate—decision to impose sentence at the very bottom of a wide guideline range.

offense that did not increase the statutory penalties or guideline range. There should be no warrant for granting relief to the latter category of defendants, as opposed to the former, based entirely on the fact that they were guilty of *additional* criminal conduct of which those in the latter category were not guilty. The application of these sentencing factors—those set forth in 18 U.S.C. § 3553(a)(1), (b)(4) and (b)(5), respectively—strongly suggest denial of relief.

Defendant fails to persuade with his claim that the crux of Defendant's prosecution "was that he ran a crack house." (Doc. No. 415 at 4). That may be so, but Defendant was sentenced based upon the amount of *powder cocaine* for which he was responsible; the First Step Act is not directed towards reducing sentences that, like Defendant's, were based on the amount of powder cocaine involved—even if the powder cocaine was associated with a crack house. Finally, Defendant's call to liberally interpret the First Step Act to achieve its remedial purpose is to no avail. (Doc. No. 415 at 4). Section 404 of the First Step Act is not an all-purpose sentencing reform statute, aimed at reducing sentencing severity and prison populations in general. Section 404 is far more specific than that. Nor is its purpose a general statutory extension of relief on collateral review, aimed at ensuring the retroactivity of constitutional rules like *Booker* and *Apprendi* that have been judicially declared non-retroactive. If Congress wishes to pass a retroactive sentencing statute with these objectives, it may do so, and this Court will apply the statute as written, with whatever liberality is appropriate under the law.

But Section 404's objective is far different from these. The purpose of Section 404 is to remedy (generally unduly long) sentences that were, unlike Defendant's sentence, based on the quantity of *crack* involved in the offense(s). Relief here would not serve that purpose in any way. One district court aptly discussed this point, albeit in the context of denying the defendant even mere eligibility for relief:

> The intent of the First Step Act's cocaine base penalty changes was to provide Fair Sentencing Act relief to those whose statutory range was driven by cocaine base disparities before the passage of the Fair Sentencing Act. Persons convicted of cocaine base offenses, but whose statutory ranges were not affected, are not eligible for relief. That is what happened here. Defendant's cocaine base conviction had no effect on his statutory range because he faced the same range on his conviction for cocaine.
>
> The First Step Act amended penalties for cocaine base, but not cocaine. Because Defendant also admitted guilt to a cocaine offense carrying the same penalty, he is not eligible for relief. For reasons set forth above, Defendant's Motion for Relief Under First Step Act [] is denied.

*United States v. Bynum*, No. CR 3:09-826-17-CMC, 2019 WL 2266437, at *3 (D.S.C. May 28, 2019). Unlike *Bynum*, based on its particular take on Section 404's eligibility requirements, this Court does not find such concerns grounds for denying *eligibility* for relief under the language of Section 404 as written, but it finds such concerns compelling grounds for denying *relief*.

"The First Step Act amended penalties for cocaine base, but not cocaine. This was intended to rectify a disparity caused by crack cocaine's effect on sentences prior to 2010. There was no such disparity in this case." *Westbrook*, 2019 WL 1542571, at *3. The same is true in Defendant's case; Defendant did not receive the sentence he received, rather than some lighter sentence, because of anything remotely related to the pre-Fair Sentencing Act disparity between the treatment of quantities of crack and the treatment of quantities of powder cocaine.

Put differently, perhaps it would have made a difference if, at the time of Defendant's original sentencing, *Apprendi* were in effect, or *Booker* were in effect, or the statutory penalties and guideline ranges for powder cocaine were less severe. But Section 404 contemplates imposition of a reduced sentence not "as if *Apprendi*, *Booker*, and/or lower statutory penalties and guideline offense levels were in effect at the time the covered offense was committed" but rather "as if sections 2 and 3 of the Fair Sentencing Act were in effect" at that time. And under the law at the time and the facts as the sentencing judge found them, it would have made no difference if

the Fair Sentencing Act "were in effect at the time [Defendant's] covered offense[s] [were] committed." First Step Act § 404(b). Thus, this is not an appropriate case for relief under the First Step Act.

## CONCLUSION

For the aforementioned reasons, the Court will deny the Motion (Doc. No. 411).

An appropriate order will be entered.


*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE